No. 26,031.

J. M. SHEAFF, *Appellant*, v. THE CITY OF KANSAS CITY, *Appellee*.

SYLLABUS BY THE COURT.

MUNICIPAL CORPORATIONS—*Regulation of Health and Nuisances—Liability for Destruction of Building*. An owner of a building torn down by a city of the first class acting in substantial compliance with an ordinance adopted under the provisions of section 13-436 of the Revised Statutes, cannot recover damages from the city for the destruction of the building, where the owner of the building purchased it after proceedings for its condemnation had been commenced, and contracted with the seller to satisfy the health department of the city and to hold the seller harmless.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. MC-CAMISH, judge. Opinion filed December 5, 1925. Affirmed.

*C. A. Bowman*, of Kansas City, for the appellant.

*William Drennan, Willard M. Benton* and *Joseph A. Lynch*, all of Kansas City, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: In this action, the plaintiff sought to recover damages caused by the defendant's tearing down a building belonging to the plaintiff. A jury was impaneled and sworn. The plaintiff introduced his evidence, to which a demurrer of the defendant was sustained. Judgment was rendered in favor of the defendant, and the plaintiff appeals.

The question presented is: Was there evidence sufficient to compel its submission to the jury? The evidence may be summarized as follows: The defendant passed an ordinance, published on October 8, 1919, which contained the following provisions:

Municipal Corporations, 28 Cyc. p. 756.

Sheaff v. Kansas City.

"Whenever the commissioner of health and sanitation of Kansas City, Kan., shall upon investigation find any building, dwelling house, or tenement within the city of Kansas City, Kan., in such an unhealthful and unsanitary condition as to be unfit for human habitation, or to be a menace to the general health of the public as a breeding place for contagion and disease, he shall immediately take steps to have such building, tenement or dwelling house abated or removed as a nuisance in the following manner, to wit: He shall cause to be served upon the owner or agent of said property, tenements or buildings, a notice commanding him to be and appear at a meeting of the board of commissioners of Kansas City, Kan., to show reason why said property, tenement or building should not be condemned by said board of commissioners, and ordered abated or removed as a nuisance. That the time and place of said hearing before said commissioners shall be set forth in said notice, and that the hearing shall not be had in less than five days after the service of such notice upon the owner or agent as aforesaid. That said notice may be served upon the owner or agent of said buildings, tenements or dwelling houses by the commissioner of health and sanitation, or by any members of the health department, or by any of the members of the police department, by delivering a copy of said notice to the agent or owner, or by leaving a copy of said notice at his usual place of residence. And in the event that the agent or owner, as aforesaid, is a nonresident of the state, the commissioner of health and sanitation shall cause such notice to be served by publishing the same in the official city paper, one publication each week for at least two weeks prior to the date set for the hearing, and copy of such notice shall be mailed to the address of nonresident agent or owner, in case his address can be ascertained.

"Upon such hearing before the board of commissioners, if in the opinion of three-fifths of said board, after having heard all the evidence in the matter, such building, tenement or property as aforesaid constitutes a nuisance as aforesaid, then and in that event the board of commissioners shall order said nuisance to be removed or abated by the owner or agent within ten days, or within such other reasonable time as the commissioners may deem proper in the premises. And if, at the end of said time designated by the commissioners for the abatement or removal of such nuisance, the owner or agent has failed in whole or in part to comply with the order of the commissioners, then and in that event the commissioners shall order the health department forthwith to remove or abate such nuisance and cause the cost of abating or removal of said nuisance to be taxed against the lot or tract of ground upon which the same is located or maintained, and to levy, certify and collect the same as a special assessment in the same manner as for repairing and building sidewalks."

Section 13-436 of the Revised Statutes gives to cities of the first class power "to make regulations to secure the general health of the city; to prevent and remove nuisances . . .; and also to provide for taxing and to tax the cost of abating or removing any nuisance against any lot or tract of ground upon which the same is located and maintained . . ., in all cases where the owner, oc-

cupant or agent of said property shall fail, refuse or neglect to abate or remove said nuisance after receiving notice to do so and being given a reasonable time in which to remove or abate the same where the city has been compelled to abate or remove the said nuisance . . . " Under the power conferred by that statute, the city enacted the ordinance, the provisions of which have heretofore been herein set out.

At the time the ordinance was passed, George Steinmueller was the owner of the lots on which the building destroyed was situated. There was then another building on the lots. After the publication of the ordinance, the following notice was given to George Steinmueller:

"DEPARTMENT OF HEALTH AND SANITATION,

"KANSAS CITY, KAN., October —, 1919.

"NOTICE.

"To George Steinmueller, 6 South Nineteenth Street:

"You are hereby notified to be and appear before the board of commissioners of the city of Kansas City, Kan., sitting in regular session on the 23d day of October, 1919, at eight o'clock p. m. in the commissioners' chambers, third floor of the City Hall, Kansas City, Kan., then and there to show reason why the apartment building located at northwest corner Sixth and State, lots 55 and 56, block 109, Wyandotte city, owned by you should not be condemned, ordered abated or removed as a nuisance, for the reason that said building and its surroundings constitutes a menace to the public health as a breeding place for epidemic and disease, and is unfit for human habitation, because of the following conditions which exist in and about said premises, to wit: Rooms not properly ventilated, said rooms in an unsanitary, dirty and filthy condition. Contaminated water supply, unusable sewage system.

"The above notice is issued in accordance with ordinance No. 16434 of the Ordinances of Kansas City, Kan.                L. B. GLOYNE,

"Health Commissioner of the City
of Kansas City, Kan."

· On October 30, 1919, George Steinmueller sold the building to the plaintiff. The contract of sale was in writing and was as follows:

"J. M. Sheaff, Present:                KANSAS CITY, KAN., October 30, 1919.

"DEAR SIR: I own lots 54, 55 and 56, block 109, Wyandotte city, now part of Kansas City, Kan., and all buildings thereon, same being on northwest corner of Sixth street and State avenue.

"I desire now to sell all buildings on said ground, together with all old brick and stone and all the curbing stones lying on the lots, and now will make you the following proposition, to wit: For the sum of three hundred ten (310) dollars, cash in hand, I will sell you all said buildings, brick and stone, including said curbing stones, you to satisfy the health officer as to time of

removal. However, it is my desire that you tear down the old building lying north of the new part occupied by L. W. Johnson, within thirty (30) days from this date. I will give you the use of said above-described lots rent free for a period of six months from this date, and you may take your time in which to tear down and remove the building now occupied by said L. W. Johnson during the next six months, and you may use it for storing much of the old lumber so far as I am concerned, just so you satisfy the health department and hold me harmless. This gives you the right to pile the old lumber on the ground for six months rent free.

"Now, in case I should sell the ground to some party or parties, who want to use the ground after the first of the coming year, why then I will give you written notice to remove the material and buildings you have bought of me within ten days of the date I serve notice on you. You must pile the lumber so as to leave a passageway to and from the cistern by my tenant on lots 52 and 53 adjoining said three lots.                Very truly yours,

                                                "GEO. STEIN MULLER."

"*George Steinmueller, Present:*                "October 30, 1919.

"I have read the foregoing proposition of yours and hereby accept it in good faith, agree to all the terms named and herewith hand you my check for the $310 named.                                        J. M. SHEAFF."

Afterward by an arrangement between Sheaff and Steinmueller, the former was permitted to leave the building on the premises until the lots were sold by Steinmueller, or until he wanted to build on them. The apartment building was removed, and is not involved in this controversy. While that building was being removed, Sheaff wrote to the city commissioners that he was taking it down, and stated that he had been informed by Mr. Flynn, of the health department, that he did not understand that the building now in controversy was included in the order to tear down, but that the next day Sheaff met Dr. Gloyne, who informed Sheaff that the building was included in the order.

The abstract of the plaintiff recites:

"That he [the city clerk] produced journals of minutes of proceedings had at meetings of the board of commissioners of the defendant city, and that the minutes of the meeting of said board held at eight o'clock p. m. on the 23d day of October, 1919, contained no record bearing on the matter of notice sent by the health commissioner of defendant city to George Steinmueller relating to an apartment building at the northwest corner of Sixth street and State; that the journal of minutes of the meeting of said board, held on Tuesday morning, January 20, 1920, contained the following bearing on this matter: 'On motion by Commissioner Kaelin, it was ordered that the matter of condition and condemnation of the building at the northwest corner of Sixth street and State avenue be referred to Commissioner Flynn, Dr. L. B. Gloyne, R. R. Hosford and the city attorney'; that journal of meetings of proceedings had at the

meeting of said board held on Tuesday morning, January 27, 1920, contained the following bearing upon this matter: 'On motion of Commissioner Flynn it was ordered that the health department be instructed to go ahead and take the necessary steps to have the building at Sixth street and State avenue, the one Mr. Sheaff is interested in, torn down'; that he had searched the indices of the minute books of the said board covering the period of October, November and December of 1919, and January of 1920, for action of the said board bearing on this matter, and that there was no such action in addition to that already set out, except that the plaintiff's claim and notice in the premises was presented and read and considered and referred to the legal department, at the meeting of May 18, 1920, and one other action by the board which was left to be and was brought out on the witness' cross-examination.

### "CROSS-EXAMINATION BY MR. DRENNAN.

"That the minutes of the meeting of said board held on November 4 (1919), contained the following bearing on this matter: 'Communication of J. M. Sheaff in regard to the order of the health department to tear down building at Sixth street and State avenue, asking that he be allowed to move the store building and put it in good repair by painting three sides, was presented, read and considered, and on motion ordered referred to the health department;' that the journal of minutes of the said board contains 'a record of all papers, all actions, everything that comes before the meeting of the board of commissioners.' "

There was no other evidence to show that the ordinance was not complied with. The building was torn down about February 27, 1920. On May 14, 1920, the plaintiff filed with the city clerk of the defendant city, his notice and claim for damages in the sum of $3,000 for the destruction of the building. The claim was not allowed.

The presumption is that the city acted in obedience to the ordinance. It was incumbent on the plaintiff to overcome that presumption. He did not introduce evidence sufficient to overcome the presumption. On the contrary, the evidence of the plaintiff showed a substantial compliance with the ordinance. Besides this, the plaintiff had contracted with Steinmueller to satisfy the city health department.

The demurrer to the plaintiff's evidence was properly sustained, and the judgment is affirmed.